NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.V., JR.

No. 1 CA-JV 25-0034

FILED 10-23-2025

Appeal from the Superior Court in Maricopa County
No. JD527480
The Honorable Jay M. Polk, Judge

**AFFIRMED**

COUNSEL

Brandy Nicole Forman, Tempe
*Appellant Mother*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Andrew J. Becke delivered the decision of the Court, in which
Presiding Judge David B. Gass and Judge Michael J. Brown joined.

**B E C K E**, Judge:

¶1        Brandy F. ("Mother") appeals the superior court's March 3, 2025 order, terminating her parental rights as to J.V., Jr. ("Child").[1] For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Child was born in March 2014. He has been subject to three dependency proceedings since he was two years old. In all, the child has been in DCS care for more than seven of his eleven years. This appeal arises from the third dependency, which has been ongoing for five years.

## I.        First Dependency

¶3        In August 2016, the Department of Child Safety ("DCS") took Child into temporary protective custody because his father ("Father") admitted he could not provide for Child or meet Child's needs. Several days later, DCS held a team decision making meeting. Father attended the meeting; Mother did not. Father reported that Mother had a history of substance abuse. Child's maternal grandmother confirmed that Mother had a significant history of methamphetamine and heroin use.

¶4        DCS filed a dependency petition, alleging Mother was unable to parent Child because of substance abuse, neglect, and a prior termination of her parental rights as to another child. The court found that Mother knowingly waived her right to contest the petition and declared Child dependent, thereby making him a ward of the court. DCS then took custody of him.

¶5        In May 2017, Mother moved to have Child returned to her physical custody. She alleged that she had maintained sobriety, the parent–child bond was strong, and having Child live with her was in his best interests. The court granted Mother's motion, and Child was returned to her custody. In November 2017, the court dismissed the dependency and released Child from its wardship.

---

[1] The superior court also terminated Father's parental rights as to Child, but he is not a party to this appeal.

## II. Second Dependency

¶6        Child was also involved in a separate case initiated by his paternal grandfather, who requested custody of him.[2] At a December 2018 hearing, the best-interests attorney representing Child in that matter informed his parents that she intended to file a dependency petition. That same day, she filed the petition (starting this second dependency) and alleged that Mother was unable to parent Child due to substance abuse. The petition requested that Child be declared dependent, made a ward of the court, and placed in DCS's custody. The court granted the petition, ordering Child's removal from his parents' custody based on Mother's substance abuse and Father's gambling addiction and recent criminal charge.

¶7        In October 2019, DCS moved to place Child in Father's physical custody. After a team decision making meeting, DCS reported that Child was living with a relative and that Father met all conditions for reunification. The court ordered Child be placed in Father's custody.

¶8        In February 2020, DCS moved to dismiss the dependency, noting Father's completion of reunification services and maintenance of a stable home environment for Child. Mother was notified of the motion and did not object. Accordingly, the court dismissed the dependency.

## III. Third Dependency

¶9        In October 2020, DCS's case manager sought an *ex parte* order to remove Child from Father's home. In her application, she reported that Father had been arrested for several crimes, including "illegal control of an enterprise involving minors." The application also alleged that Mother (1) did not have custody of Child because of her substance abuse; (2) had given birth in May 2020 to another child exposed to methamphetamine, heroin, and methadone; and (3) had a history of suicide attempts. Father had allowed Mother to reside in the home without supervision, thereby putting Child at risk of exposure to harmful, illegal substances. The court granted the request and ordered Child's removal.

---

[2] The court denied the paternal grandfather's request to become a party to the dependency. It also rejected his motion to intervene during the first dependency. Despite not being a party, the grandfather continued to file multiple motions throughout the first dependency, repeatedly seeking to have Child placed with him. The court consistently denied his requests and found that his involvement was contrary to Child's best interests.

¶10        At the same time, DCS petitioned for dependency, alleging that Mother was unable to parent Child because of substance abuse, neglect, and mental illness.[3] DCS added that she was awaiting sentencing for a drug-related offense involving a child under the age of 15. DCS asked that Child be declared a ward of the court and placed in its care, custody, and control.

¶11        At a February 2021 hearing, the court found Child dependent as to Mother, concluding that she was unable to parent Child because of substance abuse. The court also mentioned that she failed to participate in meetings with DCS about services or reunification services during the second dependency. Although Mother claimed she was attending a methadone clinic, she could not provide its name. When DCS took custody of Child at the outset of this dependency, he tested positive for methamphetamine.

¶12        In March 2022, Mother again moved to regain custody of Child, claiming she was participating in substance abuse treatment, submitting to drug testing, and had made her home safe from illegal substances. In denying the motion, the court acknowledged that Mother engaged in some services, but concluded that "she is not sufficiently progressing with her substance abuse treatment," noting that she had tested positive for methamphetamine and fentanyl three times while the motion was pending. The court also found that returning Child to her care would pose a substantial risk to his health.

¶13        In March 2023, DCS moved to terminate Mother's parental rights as to Child for substance abuse and Child's out-of-home placement for more than 15 months. *See* A.R.S. § 8-533(B)(3), (8)(c). As stated in the motion, Child was placed with extended family, consistent with his best interests, and DCS requested termination to allow for Child's adoption.

¶14        In January 2025, the court held a two-day termination adjudication hearing. On the first day, Mother admitted to struggling with methamphetamine and heroin for many years. She also testified that she began using fentanyl in 2019.

---

[3] The petition also alleged that Father was similarly unfit due to neglect, exposure to illegal activities in the home, and incarceration.

¶15 On the second day, mother said she wanted to proceed by reading a written statement to the court. The court found that Mother knowingly waived her right to complete her testimony and call additional witnesses.

¶16 Mother read her written statement, recognizing the severity of her addiction and its resulting harm. She stated, "after trying to get clean again and again, I can tell you with certainty today that I am now and will always be an addict." Mother acknowledged her struggles, but believed her past should not bar Child's return to her care. She asserted that DCS's involvement "played a huge role in [her] struggles and relapses."

¶17 In March 2025, the superior court granted DCS's motion, finding by clear and convincing evidence that Mother's chronic substance abuse was grounds for termination. The court determined that Mother had a long history of abusing methamphetamine, fentanyl, and heroin. She consistently used substances, failed to participate in regular drug testing, and typically tested positive when she completed drug tests. She used fentanyl two weeks before the termination adjudication hearing despite knowing she was at risk of losing her parental rights.

¶18 The court also found, by clear and convincing evidence, that Mother failed to remedy the circumstances that led to Child's out-of-home placement for over 15 months. By a preponderance of evidence, the court determined that termination of Mother's parental rights was in Child's best interests. DCS was appointed as Child's legal guardian and granted legal-decision-making authority.

¶19 Mother timely appealed, and we have jurisdiction under A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

¶20 The issues before us are whether (1) reasonable evidence supported the court's findings that Mother's chronic substance abuse justified termination, (2) DCS made reasonable efforts to reunify Mother and Child, and (3) reasonable evidence supported the court's best-interests findings. Mother also asserts that DCS failed to make up over 15 hours of parenting time, but her claim is moot and does not change the outcome of our decision. *See* A.R.S. § 8-539 ("An order terminating the parent-child relationship shall divest the parent . . . of all legal rights, privileges, duties and obligations.").

I. **Reasonable Evidence Supported the Superior Court's Findings Under A.R.S. § 8-533(B)(3)**.

¶21 To support a termination order, the superior court must find (1) a ground for termination under A.R.S. § 8-533(B) by clear and convincing evidence, and (2) termination is in the child's best interests by a preponderance of evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018). We accept the court's factual findings if reasonable evidence and inferences support them and affirm the court's legal conclusions regarding the termination's statutory grounds unless clearly erroneous. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478–79, ¶¶ 30–31 (2023). We will not reweigh the evidence. *Alma S.*, 245 Ariz. at 151, ¶ 18. And if we can affirm on one ground, we need not consider Mother's challenge based on any other grounds. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 578, ¶ 5 (App. 2017).

¶22 We begin with the termination ground based on chronic substance abuse. Section 8-533(B)(3) allows termination of parental rights when a parent's history of substance abuse renders the parent "unable to discharge parental responsibilities" and reasonable grounds exist "to believe that the condition will continue for a prolonged indeterminate period." To order termination on substance-abuse grounds, the court must find that DCS "made reasonable efforts to reunify the family or that such efforts would have been futile." *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005).

¶23 Here, reasonable evidence supports the court's conclusion that Mother's chronic substance abuse prevents her from carrying out her parental responsibilities and that her condition would continue for a "prolonged indeterminate period." A.R.S. § 8-533(B)(3).

¶24 For nearly 20 years, Mother has struggled with substance abuse, primarily involving methamphetamine, fentanyl, and heroin. She began using methamphetamine and heroin in her mid-20s, and later began using fentanyl. Since this third dependency began, Mother missed hundreds of scheduled drug tests. *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 21 (App. 2016) (demonstrating that an appellate court considers a parent's refusal "to take most of her required drug tests" as evidence to support a finding of chronic substance abuse). Moreover, Mother tested positive for methamphetamine and fentanyl nearly 50 times during this dependency. Even after DCS moved to terminate her parental rights, Mother continued to test positive for methamphetamine and

fentanyl, including a positive result two weeks before the termination adjudication hearing.

¶25 During a psychological evaluation, Mother recognized the need for intervention and relapse prevention services to maintain her sobriety. The evaluation further concluded that her substance abuse "would lead to emotional instability and inability to discharge her parental responsibilities." She also acknowledged that she would "always be an addict." Mother's failure to remedy her substance abuse—despite knowing that termination was imminent—demonstrates that she has not overcome her substance dependency. The evidence supports the conclusion that termination is appropriate, as Child's interests must prevail over Mother's battle with drugs. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 29 (App. 2010).

## II.     Reasonable Evidence Supported the Superior Court's Conclusion That DCS Made Reasonable Efforts to Reunify Mother and Child.

¶26 Mother argues DCS failed to provide her with reasonable reunification services. We disagree.

¶27 DCS provided Mother with a range of reunification services, including substance abuse treatment, a parenting program, supervised visitation, individual counseling, psychological and bonding assessments, and drug testing. We agree with the superior court that DCS made reasonable efforts to reunify the family since this third dependency was filed and that Mother did not contest the adequacy of those services. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178, ¶ 16 (App. 2014) ("This process demands that parents voice their concerns about services to the [superior] court in a timely manner.").

¶28 Because we affirm the superior court's order based on Mother's chronic substance abuse, we do not address Child's out-of-home placement for more than 15 months. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the [superior] court ordered [termination], we need not address claims pertaining to the other grounds.").

### III. Reasonable Evidence Supported the Superior Court's Findings That Termination of the Parent–Child Relationship Was in Child's Best Interests.

¶29 We review a best-interests finding for an abuse of discretion and reverse only if "no reasonable evidence" supports the superior court's finding. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). To support a best-interests finding, the court must find that either (1) terminating will benefit the child, or (2) failing to terminate will harm the child. *Alma S.*, 245 Ariz. at 150, ¶ 13. Here, the court found both to be true.

¶30 Reasonable evidence in the record supports the court's findings. Child has referred to his current foster mother as "Mom." His current foster placement would like to adopt him and has been "aware of how to support [him] with his issues and trauma history." Meanwhile, Mother's involvement in Child's life has been limited because of her chronic substance abuse and inability to maintain sobriety. Given this record, the court did not abuse its discretion in determining that termination of the parent–child relationship was in Child's best interests.

### CONCLUSION

¶31 We affirm.



MATTHEW J. MARTIN • Clerk of the Court

**FILED**: JR